Citation Nr: 1710359 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 10-14 578 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Chicago, Illinois


THE ISSUES

1. Entitlement to service connection for sleep apnea, to include as due to an undiagnosed illness.

2. Entitlement to service connection for memory loss, to include as due to an undiagnosed illness.

3. Entitlement to an initial rating in excess of 40 percent for fibromyalgia.

4. Entitlement to an increased (compensable) rating for migraines prior to October 9, 2014, and to a rating in excess of 30 percent thereafter.

5. Entitlement to an initial compensable rating for irritable bowel syndrome (IBS).


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

A. Purcell, Associate Counsel



INTRODUCTION

The Veteran served on active duty from November 1984 to May 1995, including service in support of Operation Desert Shield/Desert Storm from August 1990 to May 1995.

These matters are on appeal from July 2007 and September 2008 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois. In October 2013, July 2014, and January 2016, the Board remanded these matters for further development.

The July 2007 rating decision denied service connection for sleep apnea and memory loss; and granted service connection for fibromyalgia, evaluated as 20 percent disabling and irritable bowel syndrome, evaluated as 10 percent disabling. The initial ratings were made effective September 27, 2006.

The September 2008 rating decision denied an increased, compensable, rating for chronic tension headaches.

An April 2010 rating decision increased the rating for fibromyalgia to 40 percent, effective September 27, 2006, including the evaluation of IBS and headaches. A July 2016 rating decision increased the rating for headaches, now described as migraines, to 30 percent, effective October 9, 2014.

The Veteran appeared at a hearing before the undersigned in September 2015. A transcript is in the record.



FINDINGS OF FACT

1. The Veteran has obstructive sleep apnea, a known clinical diagnosis. The preponderance of the competent and credible evidence is against finding that the Veteran's sleep apnea manifested in service, or is related to service.

2. The Veteran has current memory loss that is proximately due to his service-connected fibromyalgia and headaches. 

3. For the entire appeal period, the Veteran's fibromyalgia disability has been manifested by widespread musculoskeletal pain and tender points, with additional symptomatology, that are constant, or nearly so, and refractory to therapy. The maximum disability rating has been assigned for fibromyalgia for the entire appeal period.

4. For the entire appeal period, the Veteran's migraine disability has been manifested by prostrating attacks occurring on an average once a month over the last several months, and not more nearly approximating very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability.

5. For the entire appeal period, the Veteran's irritable bowel syndrome has caused severe disability with alternating diarrhea and constipation, with more or less constant abdominal distress.



CONCLUSIONS OF LAW

1. The criteria for service connection for sleep apnea, to include as a manifestation of an undiagnosed illness, have not been met. 38 U.S.C.A. §§ 1110, 1117, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).

2. The criteria for service connection for memory loss, to include as secondary to fibromyalgia and headaches, have been met. 38 U.S.C.A. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

3. The criteria for assignment of an initial disability rating in excess of 40 percent for fibromyalgia are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.71a, DC 5025 (2016).

4. The criteria for assignment of a 30 percent rating, but no higher, for chronic tension headaches are met for the entire appeal period. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.7, 4.124a, DC 8100 (2016). 

5. The criteria for assignment of an initial rating of 30 percent, but no higher, for irritable bowel syndrome have been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 4.1 , 4.2, 4.7, 4.114, Diagnostic Code (DC) 7319 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

With respect to the Veteran's claims decided herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

Service Connection Claims

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by service. This means that the facts establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). 

Service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995). 

Service connection may also be granted for disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. Secondary service connection may be established by a showing that a nonservice-connected disability is caused or aggravated (chronically worsened) by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

Service connection is provided on a presumptive basis for a Persian Gulf Veteran who exhibits objective indications of qualifying chronic disability, including resulting from undiagnosed illness, that became manifest either during active service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 21, 2016, and which by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C.A. § 1117 (West 2014); 38 C.F.R. § 3.317(a)(1) (2016).

The term "Persian Gulf veteran" means a veteran who served on active military, naval, or air service in the Southwest Asia theater of operations during the Persian Gulf War. 38 C.F.R. § 3.317(e)(1). The "Southwest Asia theater of operations" refers to Iraq, Kuwait, Saudi Arabia, Bahrain, Qatar, the United Arab Emirates, Oman, the Gulf of Aden, the Gulf of Oman, the Persian Gulf, the Arabian Sea, the Red Sea, and the airspace above these locations. 38 C.F.R. § 3.317(e)(2). The Persian Gulf War means the period beginning on August 2, 1990, and ending on the date thereafter prescribed by Presidential proclamation or by law. 38 C.F.R. § 3.2.

A qualifying chronic disability is a) an undiagnosed illness; b) a medically unexplained chronic multi-symptom illness that is defined by a cluster of signs or symptoms; or c) any diagnosed illness that the Secretary determines in regulations warrants a presumption of service connection. 38 U.S.C.A. § 11117(a)(2) (West 2014).

In the case of claims based on undiagnosed illness under 38 U.S.C.A. § 1117, unlike those for direct service connection, there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004).

With disability compensation claims, VA adjudicators are directed to assess both medical and lay evidence. In addressing lay evidence and determining its probative value, if any, attention is directed to both competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). See Layno v. Brown, 6 Vet. App. 465, 469 (1994). When considering lay evidence, the Board may properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996) (citing Gilbert, 1 Vet. App. at 54).

Service Connection for Sleep Apnea

The Veteran's DD-214 (certificate of discharge) shows he is a "Persian Gulf veteran" (i.e., had active military service in the Southwest Asia theater of operations during the Gulf War) as defined by 38 C.F.R. § 3.317.

The Veteran seeks service connection for sleep apnea, claiming that such disorder was incurred in service, is related to service, or is a manifestation of undiagnosed illness. During the September 2015 Board hearing, the Veteran testified that he experienced sleep disturbances in service but that he could not remember when he first started choking in his sleep. See September 2015 Board Hearing Tr., p. 38-41.

The Veteran underwent VA examination in relation to his sleep apnea claim in July 2007. The Veteran reported difficulty falling asleep with soreness in the back of his neck since 1996. The Veteran reported that he was diagnosed with sleep apnea in 2006, and provided a CPAP which has helped with sleep. The examiner noted that a November 1995 examination found "no sleep apneic symptoms." The examiner also noted that treatment records showed that the Veteran complained of poor sleep in 1998, which was thought to be connected to headaches. Later treatment records show that the Veteran reverted to a normal sleep pattern following treatment for headaches. The examiner opined that the sleep apnea was less likely than not caused by the Veteran's Gulf War service. The examiner explained that there was no showing of sleep apnea symptoms in the records until 2005, and that prior sleep symptoms involved difficulty falling asleep. The VA examiner further explained that the Veteran's sleep apnea is more likely due to his body mass index (BMI) in excess of 30.

In March 2016, the Veteran underwent further VA examination. The March 2016 VA examiner noted the Veteran's obstructive sleep apnea, with a diagnosis date of May 2006. The VA examiner noted that, at the time of the May 2006 sleep study diagnosing the Veteran with sleep apnea, the Veteran had a BMI of 33, was 46 years old, and had a history of obesity. The examiner opined that the sleep apnea less likely than not was incurred in or caused by service. 

The examiner explained that the Veteran was not diagnosed with sleep apnea until May 2006 when he complained of snoring. The examiner further explained that at the time of the sleep study the Veteran had a BMI greater than 30, which was the likely cause of his sleep apnea. The examiner also opined that the sleep apnea was not a manifestation of an undiagnosed illness because obstructive sleep apnea is an obstructive disorder, the Veteran has a BMI greater than 30, and the main risk factor for obstructive sleep apnea is obesity.

The July 2007 and March 2016 VA examiners provided a clinical diagnosis of sleep apnea, with a clear and specific etiology. The March 2016 VA examiner explained that the Veteran's sleep apnea was not a manifestation of undiagnosed illness or a medically unexplained chronic multi-symptom illness; because it was an obstructive disorder, with an etiology based on the Veteran's high BMI. Because the Veteran's condition has been attributed to a known clinical diagnosis, the sleep apnea cannot represent undiagnosed illness and is not subject to presumptive service connection under the provisions applicable to veterans of the Persian Gulf War. See 38 U.S.C.A. § 1117; C.F.R. § 3.317.

Analysis

The evidence weighs against a finding that the Veteran's sleep apnea began in service or is otherwise related to service. The July 2007 and March 2016 VA medical opinions are probative because they consider an accurate history, are definitive and supported by a sufficient rationale. Nieves-Rodriquez v. Shinseki, 22 Vet. App. 295 (2008). The examiner's reasoned that the Veteran's sleep apnea was the result of a known medical etiology--his high BMI and history of obesity. 

They are also supported by the rationale that earlier reports of sleep disturbances were not sleep apneic symptoms. Such rationales are consistent with the Veteran's medical records. The November 1995 VA examination, conducted six months after separation from service, noted that the Veteran had no sleep apneic symptoms other than some fatigue, that the Veteran did not fall asleep while driving, and that the Veteran did not snore per the Veteran's wife report other than periodically. 

Service connection would not be legally possible if it was proximately caused by obesity. VAOPGCPREC 1-2017 (2017). Service connection would be possible if a service connected disability caused obesity and such obesity caused or aggravated the sleep apnea. Id. The Veteran's spouse has contended that fibromyalgia caused the Veteran to become inactive and then obese. The record; however, shows findings of obesity in service, long before any reported symptoms of fibromyalgia.

The March 2016 examiner provided a probative opinion that sleep apnea was a diagnosed illness and was not a chronic multi-symptom illness of medically unexplained etiology.

The only other opinion of record is that of the Veteran. He asserts that his sleep apnea is related to service, or was incurred in service. He testified that he experienced sleep disturbances in service but was unclear on when he first started choking in his sleep. See September 2015 Board Hearing Tr., p. 38-41. The November 1995 VA examiner noted the Veteran's wife's report that the Veteran did not snore other than periodically, and concluded that the Veteran did not exhibit other sleep apneic symptoms. The Veteran and his wife are competent to report symptomatology, such as choking or snoring. In many instances, laypersons are also competent to provide opinions regarding the etiology of a disorder. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Layno v. Brown, 6 Vet. App. 465 (1994). 

However, the Veteran is not competent to say that snoring was a manifestation of sleep apnea as opposed to some other cause. The opinion of the medical professional is more probative than the Veteran's lay assertions regarding onset and etiology. The VA examiner has expertise, education, and training that the Veteran is not shown to have. As such, that opinion is afforded more weight. The Board therefore finds that the evidence weighs in favor of a finding that the Veteran's sleep apnea was not incurred in service and is not related to service.

The claim for service connection for sleep apnea must therefore be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, on these facts, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. at 53-56; 38 C.F.R. § 3.102.



Service Connection for Memory Loss 

The Veteran seeks service connection for memory loss, to include as secondary to his service-connected fibromyalgia and headaches. 

Considering the pertinent evidence in light of the governing legal authority, and resolving all reasonable doubt in the Veteran's favor, the Veteran has met the criteria to establish service connection for memory loss as secondary to service-connected fibromyalgia and headaches. The Veteran and his spouse reported that the Veteran experienced memory loss, such as getting lost and not remembering events from the prior weekend. See September 2015 Board Hearing Transcript, pp. 41-44. VA treatment records reflect the Veteran's reports that he gets disoriented, forgets where he put things, forgets what his wife has told him, and forgets the content of prior conversations with others. See March 2016 VA Treatment Record. While the April 2016 VA examiner did not diagnose a mental disorder, the VA examiner opined that the Veteran experienced mild memory loss, impairment of short-term and long-term memory, and disturbances of motivation and mood. The VA examiner linked these memory loss symptoms to the Veteran's service-connected fibromyalgia and chronic headaches. Accordingly, service connection for the Veteran's memory loss is warranted, as secondary to service-connected fibromyalgia and chronic headaches.

Increased and Initial Ratings

Disability ratings are determined by the application of VA's Schedule for Rating Disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. Because the ability to overcome the handicap of disability varies widely among individuals, the disability ratings are based primarily upon the average impairment in earning capacity resulting from a service-connected disability, that is, upon the economic or industrial handicap which must be overcome and not from individual success in overcoming it. See 38 C.F.R. § 4.15. 

Where there is a question as to which of two disability ratings shall be applied, the higher disability rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7. Otherwise, the lower rating will be assigned. Id. All potential applicable diagnostic codes, whether or not raised by a claimant, must be considered. Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991). Furthermore, when it is not possible to separate the effects of the service-connected disability from a nonservice-connected condition, such signs and symptoms must be attributed to the service-connected disability. 38 C.F.R. § 3.102; Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam). 

Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, where a claimant is awarded service connection and assigned an initial disability rating, separate ratings can be assigned for different periods of time since the effective date for the award of service connection ("known as staged ratings"). See Fenderson v. West, 12 Vet. App. 119, 125-27 (1999). Staged ratings are appropriate in any case when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505, 510 (2007).

After careful consideration of the evidence, any reasonable doubt remaining on any material question of law or fact is to be resolved in favor of the claimant. 38 C.F.R. § 4.3; Fagan v. Shinseki, 573 F.3d 1282, 1287 (2009).

Increased Rating for Fibromyalgia

The Veteran seeks a higher rating for fibromyalgia. The appeal period now before the Board begins September 27, 2006, which is when service connection was granted for this condition.

The Veteran's disability has been assigned a rating under Diagnostic Code (DC) 5025 of 38 C.F.R. § 4.71a. The applicable rating schedule is set forth as follows:

5025 Fibromyalgia (fibrositis, primary fibromyalgia syndrome) 

With widespread musculoskeletal pain and tender points, with or without associated fatigue, sleep disturbance, stiffness, paresthesias, headache, irritable bowel symptoms, depression, anxiety, or Raynaud's-like symptoms: 

That are constant, or nearly so, and refractory to therapy
40 
That are episodic, with exacerbations often precipitated by environmental or emotional stress or by overexertion, but that are present more than one-third of the time
20 
That require continuous medication for control
10 
NOTE: Widespread pain means pain in both the left and right sides of the body, that is both above and below the waist, and that affects both the axial skeleton (i.e., cervical spine, anterior chest, thoracic spine, or low back) and the extremities.


"Refractory" means resistant to treatment or cure; unresponsive to stimulus; or not responding to an infectious agent. Merriam-Webster Medical Dictionary available at http://c.merriam-webster.com/medlineplus/refractory (2016). 

July 2007, July 2009, March 2014, and October 2014 VA examiners found fibromyalgia symptoms, including widespread musculoskeletal pain, fatigue, sleep disturbances, headache, and irritable bowel syndrome. The October 2014 VA examiner concluded that the Veteran's fibromyalgia symptoms were constant or nearly constant, and refractory to treatment.

For the entire appeal period, the Veteran's fibromyalgia disability has been assigned a 40 percent schedular disability rating. This is the maximum disability rating assignable for fibromyalgia. Therefore, there is no basis to consider whether a higher schedular disability rating may be assigned. See 38 C.F.R. § 4.71a, DC 5025. 

Because fibromyalgia is specifically listed in the rating schedule, it may not be rated by analogy under a different diagnostic code. Copeland v. McDonald, 27 Vet. App. 333, 337 (2015). Therefore, no other diagnostic codes are potentially applicable which might afford a higher rating on an alternative basis. 

Finally, the rating criteria for evaluating fibromyalgia under 38 CFR 4.71a, DC 5025 do not exclude assignment of separate evaluations when disabilities are diagnosed secondary to fibromyalgia. See, e.g., M21-1 III.iv.4.A.12.c., Evaluating Fibromyalgia. Here, the RO has previously granted service connection for separate disabilities related to the Veteran's fibromyalgia, including IBS and chronic tension headaches. During the course of the appeal, in an April 2010 rating decision, the RO increased the rating for fibromyalgia for the entire appeal period but found the Veteran's service-connected IBS and chronic tension headaches could no longer be rated separately. However, as the Veteran's fibromyalgia by itself warrants the 40 percent rating, and the issues of higher ratings for IBS and chronic tension headaches are properly before the Board, the Board will consider the appropriate ratings for the Veteran's service-connected IBS and chronic tension headaches.

Increased Rating for Chronic Tension Headaches/Migraines

The disability ratings for the chronic tension headache disability or migraines have been assigned under Diagnostic Code (DC) 8100 of 38 C.F.R. § 4.124a. The applicable rating schedule is set forth as follows:

8100 Migraine:

With very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability
50
With characteristic prostrating attacks occurring on an average once a month over last several months
30
With characteristic prostrating attacks averaging one in 2 months over last several months
10
With less frequent attacks
0

"Prostrating," as used in 38 CFR § 4.124a, DC 8100, means "causing extreme exhaustion, powerlessness, debilitation or incapacitation with substantial inability to engage in ordinary activities." See M21-1, III.iv.4.G.7.b. Completely prostrating means "extreme exhaustion or powerlessness with essentially total inability to engage in ordinary activities." See M21-1, III.iv.4.G.7.b.

Prostration is substantially defined by how the disabled individual subjectively feels and functions when having chronic tension headache symptoms. See M21-1, III.iv.4.G.7.d. Examples of prostrating symptoms include 1) experiencing severe headaches and vomiting when exposed to light; 2) not engaging in any activities when this occurs; and 3) must rest or sleep during these episodes. See M21-1, III.iv.4.G.7.d. 

"Productive of severe economic inadaptability" can be read as having either the meaning of "producing" or "capable of producing," and nowhere in DC 8100 is "inadaptability" defined, nor can a definition be found elsewhere in title 38 of the Code of Federal Regulations. Severe economic inadaptability denotes a degree of substantial work impairment, but does not mean the individual is incapable of substantially gainful employment. See M21-1, III.iv.4.G.7.e; Pierce v. Principi, 18 Vet. App. 440, 445-46 (2004). Evidence of work impairment includes the use of sick leave or unpaid absence. See M21-1, III.iv.4.G.7.e. 

Here, the evidence shows that the Veteran's disability is manifested by characteristic prostrating attacks occurring on an average once a month over the last several months for the entire period on appeal.

Throughout, the Veteran has described frequent headaches ranging in severity with the worst occurring approximately twice a month. See September 2015 Board Hearing Tr., pp. 17-19. The Veteran reported that with the worst headaches, he experiences sensitivity to light and has to lie down or stop his activities. Id.; March 2013 Board Hearing Tr., p. 8; see also October 2009 Veteran's Spouse's Statement. The Veteran reported that he does not take time off from work generally, because he can relax as needed as he usually works from home. See September 2015 Board Hearing Tr., p. 20.

While the August 2008 VA examiner noted that the Veteran suffered from migraines that significantly interfered with his activities of daily living, the August 2008 VA examiner did not opine as to the history of frequency and duration of attacks, and whether they were prostrating in nature. The July 2009 VA examiner also did not opine as to the history of frequency and duration of attacks, and whether they were prostrating in nature. 

During the October 2014 VA examination, the Veteran reported frequent headaches with no change in vision, no extreme sensitivity to light, and no nausea or vomiting; but with pressure around the temple or back of the head. The Veteran reported more severe headaches twice a month, with pounding and extreme sensitivity to light. The October 2014 VA examiner, based on reports consistent with the Veteran's reports throughout the appeal period, opined that the Veteran experienced characteristic prostrating attacks of headache pain approximately once a month. 

Given the evidence of record, and after resolving any reasonable doubt in favor of the Veteran, the Board finds that a 30 percent rating is warranted for the Veteran's chronic tension headache disability for the entire appeal period. 

The Board finds that this evidence does not present a disability picture involving very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. See 38 C.F.R. § 4.124a, DC 8100; M21-1, III.iv.4.G.7.c. While the Veteran reported frequent headaches, the headaches ranged in severity and severe headaches were less frequent. The October 2014 VA examiner concluded that the Veteran's headaches were characteristic prostrating attacks only once a month, which is consistent with a lower disability level and, therefore, cannot be considered "very frequent." See 38 C.F.R. § 4.124a, DC 8100. Moreover, the Veteran's ability to adapt to the headaches at work by resting, while still completing his work, indicates that these headaches did not cause severe economic inadaptability. 

The Board has considered the Veteran and his wife's statements regarding the frequency and severity of his headaches. It is generally within the competence of a lay person to identify and observe the effect of a disability under the ordinary conditions of daily life. Moreover, the Veteran's headache condition manifests with symptoms readily observable by a lay person, such as pain. The Veteran's wife testified to the Veteran's actions (i.e., stopping his activities and resting) and how often she observed those actions. Accordingly, the lay evidence is competent evidence to this extent. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Fountain, 27 Vet. App. at 274-75. Accordingly, such testimony is useful in understanding the Veteran's symptoms and the effect of the disability on his daily life. However, the rating schedule for evaluating headaches requires adjudicative determinations regarding, for instance, whether the Veteran's headaches involved prostrating attacks. 

To conclude, the Board finds that the Veteran's disability picture and symptomatology, taken as a whole and in combination with the subjective and objective evidence, has more nearly approximated the criteria for a 30 percent rating, and no higher, for the entire appeal period. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). Therefore, even after resolving all reasonable doubt in the Veteran's favor, a higher rating is not assignable for the Veteran's headache disability. 

The Board has not set an effective date for the increased rating, because the agency of original jurisdiction will adjudicate that question when it implements the Board decision. Unlike the case of an initial rating, for which the appeal period begins with the effective date of service connection; the effective date of the increased rating will turn on determinations as to when the Veteran filed the claim for increase and when the increase was factually ascertainable. See 38 C.F.R. § 3.400(o) (2016). It would be a potential denial of due process for the Board to make these determinations in the first instance.

Increased Rating for Irritable Bowel Syndrome

The Veteran was initially assigned a 10 percent rating for his IBS, but the RO combined his IBS with his fibromyalgia rating and essentially assigned a noncompensable rating for the Veteran's IBS throughout the appeal period, from September 27, 2006 to present.

The Veteran's IBS disability is rated under Diagnostic Code (DC) 7319 of 38 C.F.R. § 4.114. The applicable rating schedule is set forth as follows:

7319 Irritable colon syndrome (spastic colitis, mucous colitis, etc.):

Severe; diarrhea, or alternating diarrhea and constipation, with more or less constant abdominal distress
30
Moderate; frequent episodes of bowel disturbance with abdominal distress
10
Mild; disturbances of bowel function with occasional episodes of abdominal distress
0

When deciding these claims for increased disability ratings, the Board must particularly consider the credibility of a claimant's statements reporting symptoms of a "personal affliction," such as a veteran's statements that he or she had constipation. See Tatum v. Shinseki, 23 Vet. App. 152, 155 (2009). 

Here, the evidence shows that the Veteran's IBS manifested in severe symptoms, with alternating diarrhea and constipation, with more or less constant abdominal distress for the entire appeal period, from September 27, 2006, to present.

Throughout the appeal period, the Veteran reported constant pain and alternating diarrhea and constipation. See July 2008 Veteran's Statement; see also March 2013 Board Hearing Tr., p. 9 (Veteran testified he experiences constipation and diarrhea); September 2015 Board Hearing Tr., p. 23 (Veteran testified that despite diet changes he still experienced constipation). The Veteran's spouse testified that they needed to plan around meals because the Veteran could not be in the car after meals. See September 2015 Board Hearing Tr., p. 23. 

VA treatment records support the Veteran's reports of alternating constipation and diarrhea, and abdominal cramping. See, e.g., March 2006 VA Treatment Record (noting "crampy" abdominal pain and alternating constipation and diarrhea); December 2011 VA Treatment Record (noting loose stools 3-4 times per day, mostly after meals). The July 2007 VA fibromyalgia examiner noted that the Veteran experienced cramping and abdominal pain, with constipation and episodes of diarrhea. The July 2007 VA gastrointestinal examiner also noted the Veteran's report of diarrhea, constipation, and abdominal cramping and pain. The July 2007 VA examiner noted that the Veteran experienced diarrhea every 1-2 weeks lasting 2-3 days, followed by hard stools. A July 2009 VA gastrointestinal examiner noted the Veteran experiences 3-4 loose stools per day with urgency, but commented the Veteran did not have significant constipation or diarrhea. The October 2014 VA examiner noted the Veteran's alternating diarrhea and constipation, explaining the Veteran experienced diarrhea with liquid stools alternating with episodic straining with bowel movements. The October 2014 VA examiner opined that there were no episodes of bowel disturbance with abdominal distress, or exacerbations or attacks of the intestinal condition. 

This evidence shows that a 30 percent rating is warranted the IBS disability for the entire appeal period. Although the October 2014 VA examiner opined that there were no episodes of bowel disturbance with abdominal distress, the Veteran's lay statements, combined with the VA treatment records and the remainder of the VA examination reports, including the October 2014 VA examiner's finding that the Veteran experienced alternating diarrhea and constipation, show that the Veteran experienced alternating diarrhea and constipation, with abdominal cramping and pain.

This evidence is consistent with a disability picture involving severe IBS symptoms with alternating diarrhea and constipation with more or less constant abdominal distress. See 38 C.F.R. § 4.114, DC 7319. Accordingly, the maximum schedular rating, 30 percent, is warranted for the Veteran's IBS disability throughout the initial rating period. 

Extraschedular Considerations

The Board's findings above are based on the rating schedule. Generally, it must be remembered that the degrees of disability specified in the rating schedule are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1. In this regard, the basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. See 38 C.F.R. § 4.10. The disability evaluations are based upon this functional impairment-the lack of usefulness, of these parts or systems, especially in self-support. Moreover, the rating schedule is based primarily upon the average impairment in earning capacity, that is, upon the economic or industrial handicap which must be overcome and not from individual success in overcoming it. 38 C.F.R. § 4.15.

To afford justice in exceptional situations, however, an extraschedular rating may also be assignable. 38 C.F.R. § 3.321(b). The Board may not, in the first instance, assign an increased rating on an extraschedular basis, but may determine whether referral for extraschedular consideration is warranted, provided that it articulates the reasons or bases for that determination. See Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). 

The extraschedular determination must follow a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111, 115 (2008).

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, the level of severity and symptomatology of a Veteran's service-connected disability must be compared with the established criteria found in the rating schedule for that disability. Id. If the rating criteria reasonably describe a Veteran's disability level and symptomatology, the disability picture is contemplated by the rating schedule. Therefore, the assigned schedular evaluation is adequate and no referral is required. Id. If the schedular evaluation does not contemplate the level of disability and symptomatology, and is found inadequate, the second step of the inquiry requires the Board to determine whether the exceptional disability picture exhibits other related factors such as marked interference with employment or frequent periods of hospitalization. Id. at 115-16.

If analysis of the first two steps shows that the rating schedule is inadequate to evaluate the disability picture and that picture shows the related factors discussed above, the final step requires that the disability be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination of whether the disability picture requires the assignment of an extraschedular rating. Thun, 22 Vet. App. 111.

Although the rating schedule contemplates headaches, diarrhea and constipation, fatigue, sleep disturbance, and pain and weakness, it does not contemplate memory loss. The April 2016 VA examiner related the Veteran's symptoms of memory loss to his service-connected fibromyalgia and chronic headaches. However, during the April 2016 VA examination, the Veteran denied that the memory loss had any impact on his work or activities of daily living. The Veteran has not asserted interference with employment nor hospitalizations resulting from memory loss. Additionally, the Veteran has not alleged or indicated that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). Accordingly, referral for consideration of an extraschedular rating is not warranted. Based on the foregoing, the Board finds the schedular evaluation is adequate, and referral is not required. 38 C.F.R. § 3.321; Thun, 22 Vet. App. 111. 

In Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for a total disability rating due to individual unemployability (TDIU) is part of a rating claim when such claim is expressly raised by the Veteran or reasonably raised by the record. In this regard, the Veteran has not contended that his service-connected disabilities render him unemployable. In the September 2015 Board hearing, the Veteran and his spouse testified that he was still working full-time. There is no indication that this employment was marginal. Therefore, the Board finds no evidence of unemployability and that the issue of entitlement to a TDIU due to service-connected disabilities has not been raised.


ORDER

Service connection for sleep apnea is denied.

Service connection for memory loss is granted.

An initial rating in excess of 40 percent for fibromyalgia disability is denied.

A 30 percent disability rating, but no higher, for the Veteran's chronic tension headache disability is granted for the entire appeal period.

An initial 30 percent disability for irritable bowel syndrome is granted, effective the date of service connection. 



____________________________________________
Mark D. Hindin 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs